[No. 804-2.    Division Two.    June 8, 1973.]

MAURICE H. LEAK, *Respondent*, v. UNITED STATES RUBBER Co., *et al.*, *Appellants*.

*Gerry A. Reitsch* (of *Klingberg, Houston, Reitsch, Cross & Frey*), for appellants.

*Howard P. Pruzan* and *Hugh Miracle* (of *Miracle & Pruzan*), and *James D. McCoy,* for respondent.

ARMSTRONG, J.—The defendants, United States Rubber Company, Uniroyal, Inc., and Uniroyal Home and Auto Center, appeal from a judgment entered pursuant to a jury verdict of $48,000 in favor of the plaintiff, Maurice Leak. The suit is one for personal injuries sustained by the plaintiff when a wheel fell off his pickup truck.

The assignments of error raise the following issues: (1) did the accident light up, activate or aggravate the preexisting controlled condition of epilepsy; (2) did the plaintiff prove permanent injury as a result of the accident; (3) did the court err in instructing the jury on future disability, future medical expenses, loss of earning capacity and the mortality tables; and (4) were the damages excessive. We find no error.

The plaintiff's evidence showed that he is a 48-year-old laborer for the Weyerhaeuser Company in Longview. He has been an epileptic for 31 years. Prescribed anticonvulsive medication had so controlled his seizures that he had not experienced a grand mal seizure since 1954 nor a petit mal seizure since 1962. On June 6, 1970, one of the defendants, Uniroyal Home and Auto Center, installed four tires on the plaintiff's pickup truck. While he was driving home in the truck the left front wheel fell off. The ensuing jolt left the plaintiff unconscious and he suffered a cervical strain and a lumbosacral strain. Two days later, while being hospitalized for these injuries, plaintiff experienced a grand mal seizure. In December, 1970 the plaintiff began complaining

to his treating physician, Dr. Vink, that he had been experiencing petit mal seizures. These petit mal seizures begin with a headache on top of his head. He then has a few seconds of laughing and a loss of control of the urinary sphincter. They can occur at any time. Dr. Vink became concerned over the reoccurrence of the seizures and over the amount of anticonvulsive medication the plaintiff was taking so he referred him to the neurological department at the University of Washington for testing and examination.

While at the University of Washington the plaintiff was treated by Dr. McDowell. Dr. McDowell experimented with the plaintiff's medication in an attempt to control the seizures and reduce the medication. He succeeded in reducing the medication but has not yet brought the seizures under control to the extent achieved prior to the injury. As a result the plaintiff must wear either an incontinence clip which pinches off the penis and urinary tract, or incontinence pants, which are similar to baby pants. Dr. McDowell testified that the resumption of the seizure activity after the accident was "more likely than not" caused by the trauma of the accident.

Defendants contend there was no causal relationship between the accident and plaintiff's epilepsy because it was not shown that the accident lighted up or aggravated the preexisting epileptic condition. We do not agree.

The court instructed the jury on aggravation of a preexisting condition in an adaptation of WPI 30.18, 6 Wash. Prac. 165. Since error was not assigned to this instruction it becomes the law of the case. CAROA 43.

■■ When a plaintiff seeks recovery for physical conditions allegedly resulting from injuries inflicted by the wrongful act of a defendant, the plaintiff must produce sufficient evidence to establish with reasonable certainty a causal relationship between the injury and the subsequent condition. The relationship is established with reasonable certainty when the jury may decide the issue without indulging in speculation and conjecture· The relationship may be established by either direct or circumstantial evi-

dence. Medical testimony is necessary when the causal relationship is not clearly disclosed by the circumstantial evidence. The medical expert's testimony must be at least that the injury "probably" or "more likely than not" caused the subsequent condition. *Orcutt v. Spokane County*, 58 Wn.2d 846, 364 P.2d 1102 (1961); *Carpenter v. Best's Apparel, Inc.*, 4 Wn. App. 439, 481 P.2d 924 (1971).

The plaintiff established the necessary causal relationship in the instant case by a combination of direct and circumstantial evidence. Although the plaintiff's treating physician, Dr. Vink, was not able to testify that the reoccurrence of the epileptic seizures was more likely than not the result of the trauma which the plaintiff suffered in the accident, Dr. McDowell did so testify. The circumstantial evidence which showed a causal relationship is that the plaintiff's doctor had, previous to the accident, attained such control over his seizures that the plaintiff had not had a grand mal seizure for 16 years nor a petit mal seizure for 8 years. As a direct result of the accident he suffered a period of unconsciousness. Two days later he experienced a grand mal seizure. Within 5 months he began complaining to his treating physician of uncontrollable laughter and incontinence, the symptoms of his petit mal seizures.

The lay and medical evidence of controlled epilepsy before the accident, followed by a head injury caused by the accident, a grand mal seizure 2 days after the accident and later petit mal seizures, established with reasonable certainty a causal relationship between the accident and the activation of the preexisting controlled epilepsy. It was not error for the court to permit the jury to consider the aggravation of the preexisting controlled epilepsy in awarding damages. Likewise, the challenged bill for neurological studies at the University of Washington was properly admitted in evidence.

Defendants next contend there was not sufficient evidence to submit to the jury the issue of permanent injury. Therefore, they argue, it was error to instruct the jury that they could award damages for future disability, future

medical expenses and loss of earning capacity.

■ Plaintiff answers this argument by pointing out that the instruction on damages makes no reference to permanent injury and therefore it is not necessary to establish *permanency* to recover for *future* damages for any of the elements referred to by plaintiff.

We agree with plaintiff that it is not necessary to prove permanency to establish future disability, future pain and suffering, and future medical expenses. Future disability, future pain and suffering and future medical care and treatment may be proved to exist for a period of time after the trial and yet may not exist on a permanent basis. As we shall explain, there was substantial evidence to justify an award for each of these damage elements with reasonable certainty. *Orme v. Watkins,* 44 Wn.2d 325, 267 P.2d 681 (1954); *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P.2d 947 (1934); Annot., 69 A.L.R.2d 1262 (1960); Annot., 18 A.L.R.3d 10 (1968).

■ We disagree with plaintiff with reference to proof of impairment of earning capacity. *Murray v. Mossman,* 52 Wn.2d 885, 329 P.2d 1089 (1958) defines impairment of earning capacity as "the permanent diminution of the ability to earn money."

We shall first consider whether future disability was proven with reasonable certainty. We believe that there was substantial evidence of future disability with respect to the aggravation of plaintiff's preexisting controlled epilepsy.

His petit mal epileptic seizures were recurring on a regular basis at the time of the trial. Prior to the accident he had never been required to wear any incontinence device. From the time his epileptic symptoms returned, after the accident, he was required to wear either an incontinence clip or incontinence pants at all times. There was no medical assurance that the petit mal seizures could be brought under control.

We need not decide whether the aggravation of the epilepsy was a permanent disability or merely a future disa-

bility, which was not expected to become permanent. Very clearly it constituted future disability because it could be inferred from the evidence that the petit mal seizures would continue for at least some time after the trial, if not on a permanent basis.

There was substantial evidence of permanency with reference to the injury to plaintiff's cervical and lumbosacral spine. He had been hospitalized several times for this condition. The defense medical examiner found plaintiff's neck and back conditions fixed on a chronic basis. Plaintiff's attending physician testified that the long-term prognosis of the cervical spine strain, together with traumatic aggravation of a preexisting arthritis, was "not good" and the tendency of his spinal condition to get worse "is almost certain." It was established that since the accident plaintiff suffers pain while working.

We believe the evidence relating to the back and neck condition went beyond proof necessary to establish future disability. Permanent spinal disability as a result of the accident was established with reasonable certainty.

Defendants next contend that there was not substantial evidence that future medical expenses would be incurred. They argue that there was no further treatment indicated for his back and neck condition and the cost of medication for his epilepsy was not increased by the injury.

The only authority cited in support of defendant's position is the annotation, *Requisite proof to permit recovery for future medical expenses as item of damages in personal injury action,* Annot., 69 A.L.R.2d 1261 (1960). The annotation correctly expresses the general rule that recovery may be had for future medical expense which is reasonably certain to be necessarily incurred in the future. Before an allowance for the cost of future medical care can be made there must be some evidentiary basis to support a finding that future medical care will be necessitated by the injury suffered by the plaintiff.

The annotation defendants rely upon cites *Webster v. Seattle, R. & S. Ry. Co.,* 42 Wash. 364, 85 P. 2 (1906), which

contains an analysis of proof requirements. No evidence of the cost of medical care was given, but there was evidence of medical conditions from which the plaintiff had not yet recovered and which could be considered permanent. At page 365 our Supreme Court stated:

> This evidence was sufficient to support the instruction, [on future medical expense] because when it was shown that respondent was in need of medical attendance and had employed physicians, the presumption followed that there was some expense attached to such employment; and when it was also shown that respondent would suffer in the future, it followed that in all probability he would need medical attention for which the jury were at liberty to fix a nominal sum at least.

*See also Taylor v. Lubetich,* 2 Wn.2d 6, 97 P.2d 142 (1939); and *Helman v. Sacred Heart Hosp.,* 62 Wn.2d 136, 381 P.2d 605, 96 A.L.R.2d 1193 (1963).

The evidentiary basis for an award of damages for future medical care was that plaintiff was still under treatment for the epileptic seizures which had recurred after the injury. He had been hospitalized once to endeavor to control the seizures and reduce medication. While the spinal condition was in a chronic state the attending physician believed it would get worse. Medical expenses had already totaled $2,440.56.

Since plaintiff's epileptic seizures were recurring at the time of trial and he had received medical attention for the seizures, including a neurological study at the University of Washington Hospital, it could be inferred from the evidence that future treatment would be necessary. Likewise, since his back and neck were continuing to cause him pain, both from the initial injury and an aggravation and worsening of a preexisting arthritic condition to that area, it could be inferred that he would have additional medical treatment in the future. The court was warranted in submitting the issue of future medical expense to the jury.

Defendants next object to the inclusion in the damage instruction of the element of impairment of earning capacity reasonably certain to be incurred in the future.

There was substantial evidence that the conditions caused by the accident resulted in his inability to perform his work as well as he could before the injury. A fellow workman described his inability to lift weight as well as he could before the injury and further stated, "We all understood he was in pain."

His attending physician stated:

The long-term, I am talking about years now, the long-term effect, long-term prognosis is not good, particularly for a man who is working manually. It's obviously better for somebody who is less dependent on the use of his limbs and his back in the course of his daily work.

In ruling on this issue the trial court observed: "Mr. Leak didn't get in as much overtime as he normally could have and there were some days he didn't work. I think this is something for the jury to consider." So do we.

Where a permanent injury has been established and plaintiff proves that he is unable to work as well as he could before the accident and suffers pain while he is working, he is entitled to compensation for impairment of earning capacity. *Johnson v. Howard*, 45 Wn.2d 433, 275 P.2d 736 (1954); *Murray v. Mossman, supra;* Annot., 18 A.L.R. 3d 88 (1968). We find that evidence of impaired earning capacity was established with reasonable certainty.

Defendants next contend that the court should not have instructed the jury on the plaintiff's life expectancy. Such an instruction is proper where there is evidence of either (a) permanent injury, (b) future loss of earnings, or (c) future pain and suffering. *DeKoning v. Williams*, 47 Wn.2d 139, 286 P.2d 694 (1955). The evidence established with reasonable certainty that plaintiff suffered permanent injury and that he would have future pain and suffering. Thus the instruction was proper.

Finally defendants contend that the verdict was excessive. An appellate court will not interfere with a verdict of a jury fixing damages unless the amount be so outrageous that it shocks the sense of justice and sound judg-

ment of the court. *Kramer v. Portland-Seattle Auto Freight, Inc.*, 43 Wn.2d 386, 261 P.2d 692 (1953).

We find the verdict was not excessive.

Judgment affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied July 16, 1973.

Review denied by Supreme Court September 25, 1973.