IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AVI LEANNE TAYLOR,<br><br>Appellant,<br><br>v.<br><br>MIRINA STONE,<br><br>Respondent. | No. 82680-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, A.C.J. — Following a bench trial, the trial court found Mirina Stone at fault for a car accident she had with Avi Taylor and awarded Taylor $35,000.00 for noneconomic damages only. On appeal, Taylor challenges the trial court's award of noneconomic damages and the failure to award economic damages. Because the award was within the range of the evidence in this case, we find no error and affirm.

FACTS

On February 23, 2016, Stone's Toyota Prius sideswiped Taylor's Fiat 500 at an intersection in West Seattle. None of the cars' airbags deployed and neither vehicle sustained substantial damage.

Immediately after the collision, Taylor sought treatment from her naturopathic physician Dr. Sari Gallegos. Dr. Gallegos examined her and noted that Taylor had sprains and strains to her back, neck, ribs, and pelvis, headaches, and pain in both wrists. "Due to the severity of [her] pain levels,"

Citations and pin cites are based on the Westlaw online version of the cited material.

Dr. Gallegos prescribed Taylor ibuprofen and "a naturopathic anti-inflammatory and nervine to help with the pain and to bring down the inflammation."

Three days later, Taylor returned to Dr. Gallegos and reported increased pain over the prior two days, along with difficulty doing many activities. "She reported pain in her neck, upper and lower back, arms, legs and ribcage." That same day, Taylor obtained a set of x-rays from chiropractic physician Dr. John Miller. The x-rays did not reveal any spinal or rib fractures. Taylor "continued to seek acupuncture, chiropractic, and ultrasound therapy treatment over the next two years."

In February 2019, Taylor initiated this tort action claiming that Stone's negligent driving caused her personal injuries. Her complaint alleged that she suffered "lasting bodily injuries, physical pain, mental anguish, emotional distress, and loss of enjoyment of life" and sought judgment against Stone for all economic and noneconomic damages.

At the bench trial in November 2020, Taylor represented herself.[1] She called several lay witnesses to testify, including Mysti Green, Joe Basco, Iris Milligan, Howard Hammond, Lisa Leon-Guerrero, and Daniel Blue. They all testified in similar fashion. Before 2016, they knew Taylor to be very active, "happy," "full of energy," not in "any pain or suffering," and "buoyant and joyful."

---

[1] The trial was conducted via Zoom because of the COVID-19 pandemic and emergency court orders designed to minimize its risk. "Zoom" is a cloud-based peer-to-peer video software platform that is used for teleconferencing, telecommuting, distance education, and social relations. "COVID-19" is the World Health Organization's official name for "coronarvirus disease 2019," a severe, highly contagious respiratory illness that quickly spread throughout the world after being discovered in December 2019.

None of them witnessed the February 2016 collision or knew exactly what injuries Taylor had sustained from that accident. As to their observations of her after the collision: Green testified Taylor was "on her couch" and "not able to move around;" Bacso said Taylor "seemed kind of hunched over and" had a "painful look on [her] face"; Milligan noted that she rarely saw Taylor after 2016 but that it was "apparent that she was managing pain"; Hammond stated that he could tell Taylor "was physically handicapped" upon seeing her after August 2016; Leon-Guerrero noticed "complaint[s] about headaches"; and Blue testified that Taylor seemed "stressed and . . . sad and depressed."

Taylor also testified, but did so in narrative fashion. She described herself as "a healer, energy medicine practitioner, clarity coach, trauma removal" and teacher of "astro travel, and other things." Taylor spoke of launching her company, Northwest Wonderland, about a month before the 2016 collision. Through Northwest Wonderland, Taylor created and sold wellness products with cannabis as an ingredient. Taylor testified:

> [T]he business, Northwest Wonderland, had projected for me nothing in the first year of operation. So I would have no income the first year and then start[ing] the second year I was going to earn $3,000 a month. And that's just what we had to the length of the business we had it tiered up toward[ ] the end so I got up to 4 but I just accounted for 3 because it was easier math.
>
> But, yeah, so I was never able to pay myself as projected because I was never able to work enough to bring enough money in.

Despite her efforts, Taylor claimed, she was not physically able to keep up with the demands of operating Northwest Wonderland. She thus alleged that in

3

December 2019, she "had to shut the doors to Northwest Wonderland in hopes of picking it back up once [she] reached pre this accident status."

Taylor also testified to being physically assaulted in 2005, to representing herself in federal court proceedings in 2010 to acquire a permanent disability award, and to suffering back, rib, hip, and other pains in a March 2012 "T-bone" car accident.

During cross-examination, defense counsel confronted Taylor about some of her damage claims, some of which included these exchanges:

> Q.   Do you recall at your deposition when I asked you about wage loss and you said you really didn't have, this was not about lost wages?
>
> A.   Right, because I didn't know how to quantify that, yeah, completely.
>
> . . .
>
> Q.   So right before the lunch break, Ms. Taylor, I'd asked you about your answer that you weren't working at the time of the accident.  You said you didn't know which accident.  I just want to go to the deposition where we talked about which accident—
>
> A.   Awesome.  And then if I could just clarify your—my answer to your question.  Yeah, I wasn't technically gainfully employed because I wasn't making money.  I wasn't technically working as per the state's language; but I did have a business I was doing my best to run.

Additionally, Taylor agreed that despite any physical struggles she suffered as a result of the 2016 collision, she actually did quite a bit of work for Northwest Wonderland inclusive of developing, marketing, and delivering products every year until she closed the business.

4

Dr. Gallegos testified Taylor was a long-established patient before the 2016 accident. On average, before 2016, Taylor reported pain of 4 out of 10 whereas after the accident, she averaged pain levels of 6 out of 10.

Taylor did not call an economist or provide any expert testimony about either past or future lost wages, lost profits, or limited earning capacity. Nor did she call any additional medical witnesses, treating providers, or other experts.

After Taylor rested her case-in-chief, Stone moved for a directed verdict contending that Taylor failed to prove that the 2016 collision proximately caused her injuries. The trial court denied Stone's motion based in part on Dr. Gallegos's testimony. It also ruled that because no medical bills were admitted into evidence and there was no testimony about costs of treatments, Stone was correct that Taylor was precluded from requesting damages "with respect to medical bills."

The defense called Dr. James Blue, a neurosurgeon, who performed a CR 35 orthopedic examination of Taylor and reviewed her medical records. Dr. Blue opined that he could not "find any evidence of a physical or structural injury [to Taylor] as a result of this accident."

Bradley Probst, a biomechanical forensics expert, also testified for the defense. He was asked to address the forces involved in this collision as opposed to any potential injuries that could have arisen from the accident. Probst opined that the forces involved were akin to "hitting a pothole or a speed bump or a variety of things like that."

5

Stone testified that the collision "seemed to be quite a gentle thing because [she] never went to [her] doctor or anything," and "[i]f I had been jerked around hard in the car, I was 7 months pregnant, I would have wanted to go to my doctor and check that the baby was fine."

After considering the testimony and evidence admitted, the trial court entered findings of fact. It concluded that Stone was liable for this collision, Taylor had proven she was injured and suffered damages as a proximate cause of the collision, and awarded Taylor $35,000.00 in noneconomic damages. It did not award any economic damages because Taylor (1) "failed to offer any medical bills or produce any testimony regarding her medical expenses," (2) "failed to offer any cost of vehicle repairs," and (3) "did not meet her burden to demonstrate that her loss of business profits or future earnings was proximately caused by the collision." The trial court later entered judgment in her favor.

Taylor appeals pro se.[2]

ANALYSIS

Taylor challenges the trial court's findings and conclusions. She also claims that the court should have awarded her more in noneconomic damages and awarded her economic damages.

---

[2] A pro se litigant is bound by the same rules of procedure and substantive law as an attorney. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Failure to act accordingly may preclude review. Olson, 69 Wn. App. at 626.

Standard of Review

Upon appeal of a bench trial, " 'respondents are entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact entered by the trial court.' " Mason v. Mortgage America, Inc., 114 Wn.2d 842, 853, 792 P.2d 142 (1990) (quoting Lidstrand v. Silvercrest Indus., 28 Wn. App. 359, 364, 623 P.2d 710 (1981)). After a trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the court's findings and, if so, whether the findings support its conclusions. City of Tacoma v. State, 117 Wn.2d 348, 361, 816 P.2d 7 (1991). Substantial evidence is that which would persuade a fair-minded, rational person of the truth of the finding. In re Estate of Palmer, 145 Wn. App. 249, 265-66, 187 P.3d 758 (2008).

"[I]t is not the function of an appellate court to substitute its judgment for that of the trial court or to weigh the evidence or the credibility of witnesses." Davis v. Dep't of Labor & Indus., 94 Wn.2d 119, 124, 615 P.2d 1279 (1980). We will not disturb findings of fact that are supported by substantial evidence, even if conflicting evidence exists. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Unchallenged findings are verities on appeal. Merriman, 168 Wn.2d at 631.

Sufficiency of the Record

As an initial matter, in 20 of the 31 assignments of error scattered throughout her brief,[3] Taylor contends that the evidence does not support the trial

---

[3] Taylor fails to provide a "separate concise statement of each error" that she "contends was made by the trial court" contrary to RAP 10.3(a)(5).

court's various findings and related conclusions. But we cannot consider these assignments of error because of an incomplete record on appeal.

An appellant bears the burden of providing a sufficient record to review the issues raised on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988). By not designating for review any of the 16 exhibits admitted at trial, some of which are referenced in her brief, Taylor fails to provide a sufficient record to enable our consideration of her appeal. RAP 9.2(b) ("If the party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding"); RAP 9.6(a). Without the trial exhibits, we cannot fully review the evidence before the trial court or discern whether substantial evidence supports its findings. Accordingly, the findings that Taylor seeks to challenge must stand. Story, 52 Wn. App. at 345.

### Application of Damages

Taylor first broadly contends that the trial court "erred in applying the evidence to the law for the damage awards," but she fails cite any evidence in the record that relates to a specific claim for damages. We generally will not consider arguments that are unsupported by pertinent legal authority, references to the record, or meaningful analysis. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by authority); Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (issues unsupported by adequate argument and authority);

State v. Camarillo, 54 Wn. App. 821, 829, 776 P.2d 176 (1989) (no references to the record).

Because Taylor fails to reference the record, cite to any evidence or provide substantive argument to support her claim of general error, we do not consider it further.

### Noneconomic Damages

Taylor alleges that the trial court erred by failing to award her any damages for past or future "devastating disfigurement," disability, and "mental and emotional anguish." We disagree.

Disfigurement, disability, and mental anguish are types of noneconomic damages. RCW 4.56.250(1)(b) defines "noneconomic damages" as "subjective, nonmonetary losses, including but not limited to pain, suffering, inconvenience, mental anguish, disability or disfigurement incurred by the injured party, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation, and destruction of the parent-child relationship."[4]

The question of whether a plaintiff is entitled to noneconomic damages turns on the *evidence*. Palmer v. Jensen, 132 Wn.2d 193, 201, 937 P.2d 597 (1997). "Although there is no per se rule that [noneconomic] damages must be awarded to every plaintiff who sustains an injury, a plaintiff who substantiates her

---

[4] In Sofie v. Fibreboard Corporation, 112 Wn.2d 636, 669, 771 P.2d 711 (1989), the court held that the limit on noneconomic damages in RCW 4.56.250 is unconstitutional. This does not affect definitions contained within that provision. See Segura v. Cabrera, 184 Wn.2d 587, 596 n.4, 362 P.3d 1278 (2015) (Gordon McCloud, J., concurring) (citing RCW 4.56.250(1)(b) for definitional purposes).

pain and suffering with evidence is entitled to [noneconomic] damages." Palmer, 132 Wn.2d at 201; Estes v. Bevan, 64 Wn.2d 869, 871, 395 P.2d 44 (1964) ("The determination of the proper amount of [noneconomic] damages which reasonably compensate a party for his personal injuries is a difficult question. There is no precise formula for making an award of such damages."). If damages are within the range of evidence, they will not be disturbed. Wooldridge v. Woolett, 96 Wn.2d 659, 668, 638 P.2d 566 (1981).

Taylor claims that the trial court's award does not adequately compensate her for the various types of noneconomic damages she suffered. But the trial court found: "Prior to this collision, [Taylor] had enjoyed tending to her garden, planning events, and working to launch her company. She testified that it is too painful now to garden, she is often too tired to socialize and she suffered too much pain to continue with her company." It also found that a "variety of witnesses testified that she needed help with her business because she was in too much pain and did not go out as much as before."

Based on these findings, the trial court concluded that Taylor "showed by a preponderance of evidence that she was injured and suffered damages as a proximate cause of the collision" and "suffered pain and loss of capacity for enjoyment of life." The trial court's award addressed all of Taylor's noneconomic damages.

Taylor has not cited any authority to suggest that the trial court was required to itemize her award by amount and type of noneconomic damage. Relying on State v. Ashcraft, 71 Wn. App. 444, 859 P.2d 60 (1993) and State v.

Atkinson, 113 Wn. App. 661, 54 P.3d 702 (2002), Taylor claims that she is entitled to recover damages specifically for disfigurement. Her reliance is misplaced. Ashcraft and Atkinson are criminal cases where the defendants were convicted of second degree assault under RCW 9A.36.021(1)(a) and the State had the burden of proving substantial bodily harm. Neither case applies to this civil action for personal injury damages.

Citing Parris v. Johnson, 3 Wn. App. 853, 859-60, 479 P.2d 91 (1970), for the proposition that an impairment to a person's work, sleep, or leisure "constitute[s] a disability," Taylor states that she was clearly disabled as a result of this collision. Then she points to Kirk v. Washington State University, 109 Wn.2d 448, 461, 746 P.2d 285 (1987), to say that "[r]ecovery for disability compensates for inability to lead a 'normal life' " and can be demonstrated by pointing to activities or interest an injured person will no longer be able to enjoy. While both Parris and Kirk say disability damages are recoverable, they do not require that such damages be delineated as subparts of a noneconomic damages award. Here, the fact remains that the trial court considered Taylor's activity limitations in its award.

Next, though she alleges that the trial court failed to award her damages for mental and emotional anguish, Taylor argues for damages in her brief based on a negligent infliction of emotional distress (NIED) claim. But she neither asserted a NIED claim in her complaint nor argued for recovery for such damages at trial. The trial court did not err by refusing to award damages that Taylor never sought.

11

In sum, Taylor fails to establish that the trial court's award of damages was outside the range of the evidence presented at trial. She has not presented a basis for appellate relief as to her noneconomic damages claims.

Economic Damages

Next, Taylor says that the trial court erred by failing to award any economic damages. " 'Economic damages' are "objectively verifiable monetary losses." RCW 4.56.250(1)(a).[5]

Here, Taylor concedes that "[u]nfortunately, the medical bills did not end up getting admitted" at trial. And while damages "are awardable for medical expenses that are reasonably certain to be necessary in the future," Stevens v. Gordon, 118 Wn. App. 43, 55, 74 P.3d 653 (2003) (citing Leak v. United States Rubber Company, 9 Wn. App. 98, 103, 511 P.2d 88 (1973)), Taylor failed to present any exhibits or testimony as to her future need for medical treatment and costs of such treatment. Based on Taylor's failure to provide objectively verifiable proof of her past and future medical costs, the trial court correctly declined to award damages for medical expenses.

Taylor also failed to establish a factual basis to recover any past or future lost wages, lost profits, or lost earning capacity. And though she testified about potentially earning $3,000.00 and up to $4,000.00 per month while operating Northwest Wonderland, Taylor also testified that she never mentioned operating

---

[5] Economic damages include "medical expenses, loss of earnings, burial costs, loss of use of property, cost of replacement or repair, cost of obtaining substitute domestic services, loss of employment, and loss of business or employment opportunities." RCW 4.56.250(1)(a).

Northwest Wonderland at her deposition and "hadn't accounted for lost wages and future lost income because [she] didn't know how to account for it." And even though she was in pain as a result of this collision, Taylor conceded that she did "quite a bit" for Northwest Wonderland including "developing products, marketing [her] products, delivering [her] products, advertising [her] products" until she shut the business down. The trial court weighed Taylor's testimony and credibility as to her economic damages claim and we will not disturb that determination on appeal. Accordingly, we cannot say that it was error for the trial court to conclude that no economic damages should be awarded based on Taylor's failure to establish that such damages were proximately caused by this collision.

### Post-Trial Motions

Finally, Taylor asserts that the trial court erred by denying her post-trial motions. In May 2021, the trial court denied Taylor's motion for reconsideration, motion for partial new trial, and motion to amend findings of fact and conclusions of law. Taylor did not appeal from the order denying her post-trial motions, so it is not properly before us on review. RAP 5.3(a); In re Marriage of Grigsby, 112 Wn. App. 1, 17, 57 P.3d 1166 (2002).

### Appellate Costs

Stone requests costs on appeal. Her request should be directed to the commissioner or court clerk pursuant to RAP 14.2, which provides: "A commissioner or clerk of the appellate court will award costs to the party that

substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."

Affirmed.

_Smith, A.C.J._

WE CONCUR:

_Bowman, J._          _Dwyer, J._