74 P.3d 653 (2003)
118 Wash.App. 43
Stacey STEVENS, a single woman, Respondent,
v.
Pat GORDON and Jane Doe Gordon, husband and wife, and the marital community comprised thereof, Appellants.
No. 21286-6-III.
Court of Appeals of Washington, Division 3, Panel Four.
August 14, 2003.
*656 Geoffrey D. Swindler, Andrews & Swindler, Spokane, for Appellants.
Aaron Lee Lowe, Curran Christopher Dempsey and Matthew S. Kaser, Aaron L. Lowe & Associates PS, Spokane, for Respondent. *654
*655 SCHULTHEIS, J.
Stacey Stevens filed a suit for damages incurred in an automobile collision caused by Pat Gordon's negligence. After mandatory arbitration, Mr. Gordon requested a trial de novo. Summary judgment was granted for Ms. Stevens on the issue of liability and trial proceeded on the issue of damages. The jury awarded Ms. Stevens damages for past and future economic loss and noneconomic damages.
On appeal, Mr. Gordon challenges the trial court's exclusion of a medical expert that had been listed as a consulting expert pursuant to CR 26(b) during arbitration. He also contends the trial court erred in using Ms. Stevens's jury instruction on proximate cause, and argues that the evidence did not support the jury instructions or verdicts on future economic loss, past wage loss, or noneconomic damages. We find that the trial court did not abuse its discretion in excluding the expert's testimony. Further finding that the proximate cause instruction was not erroneous and that the evidence supports the instructions and the verdict, we affirm.

FACTS
In March 1998, Ms. Stevens was injured when Mr. Gordon suddenly pulled out in front of her at an intersection and she crashed into his truck. She sustained a whiplash, temporomandibular joint injury, and bruising of her knee, arm, and hand. A self-employed manicurist, Ms. Stevens was unable to work for a week, and had difficulty working after the collision due to headaches and neck and jaw pain. After about three years of treatment by her primary physician, a physical medicine specialist, a chiropractor, and a physical therapist, she reportedly felt about 80 to 90 percent improved.
Ms. Stevens filed suit against Mr. Gordon and Jane Doe Gordon in March 2001 for damages, including past and future medical expenses, past and future wage loss, emotional distress, and pain. Mr. Gordon denied liability. The original case schedule order set a discovery cutoff date of December 24, 2001 and a trial date of February 25, 2002. In October 2001, Mr. Gordon disclosed Dr. Stephen Sears as one of the expert witnesses he intended to call at the time of trial.
In late November 2001, the parties agreed to set the case for mandatory arbitration. During a deposition taken November 20, Ms. Stevens revealed to Mr. Gordon that she had been injured in a second collision the week before. She described new injuries to her wrist, neck, shoulders, and back and stated that she was being treated by Dr. Peter Rinaldi, her primary care physician. Mr. Gordon arranged to have Dr. Sears perform a CR 35 examination of Ms. Stevens, which was conducted in December 2001.[1] Dr. *657 Sears examined Ms. Stevens and they discussed the injuries she received in the second collision. Finding that the symptoms of the 1998 accident had been aggravated by the 2001 accident, Dr. Sears concluded "[t]here is no scientific way to determine what percentage of her symptoms is related to either accident. If a number has to be chosen, I myself feel that 50 percent of her symptoms are a result of each accident." Clerk's Papers (CP) at 49.
On January 21, 2002, Mr. Gordon deposed Dr. Rinaldi, who indicated that by the time of the 2001 collision, Ms. Stevens was 80 to 90 percent improved from the 1998 injuries. Mr. Gordon sent Dr. Rinaldi's records to Dr. Sears on January 22 and requested an addendum opinion. In a letter to plaintiff's counsel on January 28, Mr. Gordon's counsel stated as follows:
Given the very favorable testimony of Dr. Rinaldi, at this time I will not be submitting Dr. Sears' report at the arbitration. Pursuant to [the] Mothershead[[2]] decision, neither party may submit or even mention the report at arbitration. I reserve the right to still call Dr. Sears should this matter go to trial. I will provide you ample notice of that decision, however.
CP at 46. On February 25, Mr. Gordon's counsel received a letter from Dr. Sears stating that he agreed with Dr. Rinaldi that the second accident caused new injuries to Ms. Stevens unrelated to the first accident.
The case was arbitrated in early March 2002 without the testimony of Dr. Sears. Following a decision that benefited Ms. Stevens, Mr. Gordon demanded a trial de novo. Mr. Gordon's counsel wrote to Ms. Stevens's counsel in April 2002 stating that he intended to call Dr. Sears at trial "[i]n light of the changed testimony of Dr. Rinaldi."[3] CP at 47. He also agreed to stipulate to liability in a partial summary judgment order. Later that month, Ms. Stevens moved to exclude Dr. Sears's trial testimony, arguing that he had not been included in answers to interrogatories and had been shielded from discovery by his status as a consulting expert. On May 15, 2002, the trial court granted the motion to exclude the testimony of Dr. Sears.
Trial on the issue of damages was held May 18 and 19, 2002. Dr. Rinaldi testified that the 2001 collision caused additional damage to the neck and paracervical muscles that had been injured in 1998. He noted that the second collision caused new injuries in the neck, lower back, and wrist, but did not affect the jaw area that had been injured in 1998. The jury awarded Ms. Stevens (1) past economic damages of $4,362 (health care costs) and $1,200 (wage loss); (2) future damages of $4,000 (health care costs) and $3,000 (wage loss); and (3) noneconomic damages of $16,500.
Mr. Gordon appeals the order excluding Dr. Sears's testimony and the judgment on the verdict. As listed in the notice of appeal, he challenges
the trial court's exclusion of Dr. Sears as an expert witness, the testimony of Dr. Rinaldi regarding the cost of future medical treatment, the trial court's giving of the jury instruction for future wage loss and future medical damages, the trial court's giving of the causation instruction, the trial court's refusal to give the defendants' proposed causation jury instruction, and the jury award of future economic damages.
CP at 89.

EXCLUSION OF EXPERT TESTIMONY
Mr. Gordon first challenges the trial court's exclusion of Dr. Sears as a testifying expert witness. He dedicates much of his brief to the argument that the trial court erred in imposing this sanction for the failure to supplement his answers to interrogatories. However, this was not the basis for the trial court's decision. Dr. Sears was excluded because he had been shielded from discovery by classifying him a consulting expert prior to the mandatory arbitration.
*658 Generally a party may obtain discovery of any matter that is relevant to the subject matter of the litigation and that is not privileged. CR 26(b)(1); Johnson v. McCay, 77 Wash.App. 603, 607, 893 P.2d 641 (1995). One limitation on the scope of discovery precludes discovery of the facts known and opinions held by experts not to be called at trial. CR 26(b)(5)(B); Mothershead v. Adams, 32 Wash.App. 325, 327-28, 647 P.2d 525 (1982). The opinions and even identities of these "consulting experts" are protected because they are considered part of the party's team and their opinions are treated as work product. 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 39.4 (2003). Discovery of consulting expert opinions is restricted to that allowed by CR 35, relating to physical and mental examinations, and to that authorized by court order upon a showing of exceptional circumstances. Id.; CR 26(b)(5)(B). Further, the consulting expert may not be called by the opposing party at trial. Peters v. Ballard, 58 Wash.App. 921, 926, 795 P.2d 1158 (1990); Crenna v. Ford Motor Co., 12 Wash.App. 824, 828, 532 P.2d 290 (1975).
Prior to mandatory arbitration, Mr. Gordon sent Dr. Sears's examination report to Ms. Stevens along with notification that he was shielding the report pursuant to Mothershead. Mr. Gordon promised to give "ample notice" if he decided to call Dr. Sears as a witness at trial. CP at 46. By invoking Mothershead, Mr. Gordon protected Dr. Sears from any attempts to obtain deposition testimony or to present Dr. Sears's report or testimony at arbitration. CR 26(b)(5)(B).
Apparently Mr. Gordon was not satisfied with Dr. Rinaldi's testimony at arbitration. Approximately six weeks before the trial de novo, his counsel sent Ms. Stevens's counsel the supplemental report of Dr. Sears, declaring that "[i]n light of the changed testimony of Dr. Rinaldi, I plan to call Dr. Sears at trial." CP at 47. The trial court, addressing Ms. Stevens's motion to exclude Dr. Sears, found that principles of "fundamental fairness" rebelled against "last-minute discovery" occasioned by converting this consulting expert into a testifying expert. Report of Proceedings (RP) at 15. "He has been shielded," the court ruled, "[a]nd ... he should remain shielded." RP at 15.
Whether to admit or exclude expert testimony is discretionary with the trial court. Vasquez v. Markin, 46 Wash.App. 480, 491, 731 P.2d 510 (1986). We will not find abuse of discretion unless no reasonable person would take the position adopted by the trial court. Mayer v. City of Seattle, 102 Wash.App. 66, 79, 10 P.3d 408 (2000). Contrary to Ms. Stevens's argument, the trial de novo following arbitration proceedings is not limited to the issues or evidence raised at arbitration. Wilson v. Horsley, 137 Wash.2d 500, 506, 974 P.2d 316 (1999). The trial de novo is conducted as though no arbitration proceedings had ever occurred. In re Parentage of Smith-Bartlett, 95 Wash.App. 633, 641, 976 P.2d 173 (1999). Any question of what issues, witnesses, and evidence may be added is governed by the civil rules and remains in the discretion of the trial court. Wilson, 137 Wash.2d at 506, 974 P.2d 316. Unfair surprise and timeliness are factors properly considered by the trial court in exercising this discretion. See id. at 507, 974 P.2d 316.
By shielding Dr. Sears from discovery and withholding his supplemental report until six weeks before the trial de novo, Mr. Gordon delayed discovery regarding this witness. As the court warned in Detwiler v. Gall, Landau & Young Constr. Co., 42 Wash.App. 567, 572, 712 P.2d 316 (1986), "we caution counsel against using [CR 26(b)(5)(B) ] as a tactic to delay discovery of an expert witness who will be called to testify at trial." Detwiler noted that exclusion of the expert's testimony was an appropriate sanction for failing to seasonably notify the other party that the expert would be called. Id. at 572-73, 712 P.2d 316.
In its May 15, 2002 order excluding Dr. Sears's trial testimony, the court stated that good cause existed to grant Ms. Stevens's motion because Dr. Sears had been designated a consulting expert before arbitration. The trial court's oral ruling on the motion added that it was fundamentally unfair to subject Ms. Stevens to last minute discovery by converting the consulting expert into a *659 testifying expert. Mr. Gordon argues that he notified Ms. Stevens of his intent to call Dr. Sears in ample time to depose the doctor before trial. The trial court did not agree, and Mr. Gordon fails to show that no reasonable person would take the trial court's position. Mayer, 102 Wash.App. at 79, 10 P.3d 408. Supporting the trial court's position is the fact that the discovery cutoff date (December 24, 2001) had passed when Mr. Gordon revealed his intent to call Dr. Sears as a witness, and discovery had not been reopened for the trial de novo.
Considering the trial court's broad discretion to admit or exclude expert testimony, and the reasoned basis for its decision, we find no reason to disturb its ruling.

PROXIMATE CAUSE INSTRUCTION
Mr. Gordon next assigns error to the trial court's jury instruction on proximate cause. He had proposed a definition instruction based on 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 15.01 (3d ed. 1989) (WPI):[4]
The term "proximate cause" means a cause that in a direct sequence unbroken by any new independent cause produces the injury complained of and without which such injury would not have happened.
There may be more than one proximate cause of an accident.
CP at 11. The trial court adopted the instruction submitted by Ms. Stevens, which combines language from both WPI 15.01 and WPI 12.04:[5]
The term "proximate cause" means a cause which in a direct sequence, produces the injury complained of and without which such injury would not have happened.
There may be more than one proximate cause of the same alleged injury. It is not a defense, however, that some other cause or the act of some other person who is not a party to this lawsuit may also have been a proximate cause.
CP at 82. Mr. Gordon contends the second paragraph of the court's instruction is applicable only when two or more events cause the same injury, and is therefore inappropriate here because the second accident caused new injuries. He also asserts that an instruction should not be a hybrid of two other pattern instructions.
The Washington Pattern Jury Instructions, while "an immense aid" to the practitioner and preferred over individually drafted instructions, are not mandatory. Bradley v. Maurer, 17 Wash.App. 24, 28, 560 P.2d 719 (1977). Jury instructions are sufficient if they allow the parties to argue their theories, do not mislead the jury, and properly inform the jury of the applicable law. Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265, 22 P.3d 791 (2000). The specific language of jury instructions is within the discretion of the trial court. Douglas v. Freeman, 117 Wash.2d 242, 256, 814 P.2d 1160 (1991). We review jury instructions de novo, asking first whether an instruction is erroneous, and second whether the error prejudiced a party. Cox, 141 Wash.2d at 442, 5 P.3d 1265.
Mr. Gordon's proposed instruction simply stated that there may be more than one proximate cause of an accident.[6] Under the circumstances of this case, with evidence that the second accident exacerbated old injuries, *660 Mr. Gordon's instruction would have been inadequate alone. "Although WPI 15.01 did alert the jury of the possibility of multiple proximate causes, it did not inform the jury as to the effect that such a finding has upon defendant's liability." Brashear v. Puget Sound Power & Light Co., 100 Wash.2d 204, 208, 667 P.2d 78 (1983). By including the language of WPI 12.04, the court instructed the jury that although the second collision might have been a proximate cause of injury to some of the same body parts injured in the first collision, Mr. Gordon's liability for the first injuries was not excused. Id.
The court's instruction did not require the jury to find that all of Ms. Stevens's injuries in the 2001 collision were identical to the 1998 injuries. It simply instructed the jury how to address those injuries that were proximately caused by both collisions. The proximate cause instruction, as given, did not mislead the jury, allowed both parties to argue their theories, and properly set forth the law to be applied. Cox, 141 Wash.2d at 442, 5 P.3d 1265. Accordingly, the trial court did not err in adopting Ms. Stevens's hybrid of WPI 15.01 and WPI 12.04.

SUFFICIENCY OF THE EVIDENCE
Mr. Gordon also challenges the jury instructions and verdict on future medical treatment, future wage loss, past wage loss, and noneconomic damages. He contends the evidence does not support the instructions or the award of damages.
The determination of damages is peculiarly within the province of the jury, under proper instructions, and courts are reluctant to interfere. Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 268, 840 P.2d 860 (1992) (quoting Bingaman v. Grays Harbor Comm'ty Hosp., 103 Wash.2d 831, 835-37, 699 P.2d 1230 (1985)). We will not disturb a jury's award of damages unless it is outside the range of substantial evidence, shocks the conscience of the court, or was the result of passion or prejudice. Id.
I. Future medical costs. Instruction 7 provides that the jury should consider "[t]he reasonable value of necessary medical care, treatment and services with reasonable probability to be required in the future." CP at 83. Mr. Gordon contends the evidence does not support a need for future medical costs and therefore does not support the giving of this instruction.
Damages are awardable for medical expenses that are reasonably certain to be necessary in the future. Leak v. United States Rubber Co., 9 Wash.App. 98, 103, 511 P.2d 88 (1973). On the issue of future medical needs, Dr. Rinaldi was asked, "Doctor, in terms of reasonable medical probability, on a more probable than not basis, do you have an opinion as to thewhether Stacey's going to have future care from this collision?" RP at 151. The doctor answered yes and explained that he expected Ms. Stevens to have recurrences of pain in her neck and jaw. When Dr. Rinaldi was asked how much those costs might be, he asked whether he needed to give an actual dollar amount. Ms. Stevens's counsel responded by asking if the medical costs might be several thousand dollars or possibly more than $4,000. Mr. Gordon's counsel objected to the questions as leading. The trial court overruled and the doctor answered that the medical costs could be more than $4,000 over the course of Ms. Stevens's lifetime. In taking exception to the instruction on future medical costs, Mr. Gordon again argued that the testimony of Dr. Rinaldi that supported the instruction was improperly elicited by leading questions. The trial court explained that the question was not leading because it did not suggest the answer and because Dr. Rinaldi could have rejected the answer that Ms. Stevens's counsel was hoping for.
A leading question is one that suggests the desired answer. State v. Scott, 20 Wash.2d 696, 698, 149 P.2d 152 (1944). ER 611(c) provides that leading questions should not be used in direct examination "except as may be necessary to develop the witness' testimony." The trial court has broad discretion to permit leading questions and will not be reversed absent abuse of that discretion. State v. Delarosa-Flores, 59 Wash.App. 514, 517, 799 P.2d 736 (1990). The asking of leading questions is not usually a reversible error; however, "the persistent *661 pursuit of such a course of action is a factor to be added in the balance." State v. Torres, 16 Wash.App. 254, 258, 554 P.2d 1069 (1976).
While asking Dr. Rinaldi if Ms. Stevens's future medical costs could be over $4,000 might have suggested the answer, the question arose when Dr. Rinaldi asked whether he should give a dollar amount to those costs. Asking the question helped develop the doctor's testimony. Because the question, even if leading, was not indicative of a persistent pattern of leading questions and did not appreciably affect Dr. Rinaldi's testimony, the trial court did not err in overruling Mr. Gordon's objection.
With Dr. Rinaldi's testimony and Ms. Stevens's testimony that she plans to see more doctors in the future as needed, the jury instruction on future medical costs was sufficiently supported by evidence that such costs were reasonably certain to be necessary in the future. Leak, 9 Wash.App. at 103, 511 P.2d 88.
II. Future economic loss. Mr. Gordon next contends Ms. Stevens presented no evidence to support an instruction on future wage loss. The instruction in question allowed the jury to consider "[t]he reasonable value of earnings with reasonable probability to be lost in the future." CP at 83. The evidence offered in support of this instruction was Ms. Stevens's testimony that, due to the aggravating nature of her posture during manicures, she had to reduce the number of her clients, and that she expected to miss more appointments due to medical treatments.
Lay testimony on future damages may be sufficient to justify a jury instruction. Bitzan v. Parisi, 88 Wash.2d 116, 122, 558 P.2d 775 (1977). Ms. Stevens's testimony regarding lost earnings and reduced work capacity up to the time of trial permits a reasonable inference that future economic losses will be sustained. Id. Dr. Rinaldi's testimony further established that aggravation of her injuries could require additional medical treatmentand consequently time away from clientsin the future. Taken together, the lay and medical testimony was sufficient to justify an instruction on future wage loss.
III. Past wage loss. Instruction 7 provides that the jury should consider "[t]he reasonable value of earnings lost to May 18, 2001" (the date of trial). CP at 83. Mr. Gordon contends the jury improperly awarded Ms. Stevens $1,200 in past wage loss. He argues that Ms. Stevens testified she only lost one week of work following the 1998 collision, causing only $800 in lost earnings. At trial, Ms. Stevens agreed that she was not claiming that she missed more than one full week of work. But she also stated that medical visits and treatments caused her to cancel multiple clients. She estimated the value of her missed week of work at $800. The 38 visits to medical practitioners between the time of the accident and trial, necessitating roughly another week of canceled clients (with one-hour appointments), was estimated as an additional $800 in lost earnings. The jury's award of $1,200 was well within the range of evidence that supported as much as $1,600 in past wage loss. Ed Nowogroski Ins., Inc. v. Rucker, 88 Wash.App. 350, 359, 944 P.2d 1093 (1997) (a damage award must fall within the range of relevant evidence), aff'd, 137 Wash.2d 427, 971 P.2d 936 (1999).
IV. Noneconomic damages. The jury awarded Ms. Stevens $16,500 for noneconomic damages. It was instructed to consider the following elements of noneconomic damages:
1. The nature and extent of the injuries;
2. The loss of enjoyment of life experienced and with reasonable probability to be experienced in the future; and
3. The pain and suffering, both physical and mental, experienced and with reasonable probability to be experienced in the future.
CP at 83. Mr. Gordon contends the prejudicial effect of allowing the other instructions on future damages and excluding Dr. Sears's testimony led to an unfair award of noneconomic damages.
We initially address Ms. Stevens's contention that this issue was not properly identified for appeal, as well as Mr. Gordon's *662 responsive motion to "clarify" the notice of appeal. See Motion to Clarify Notice of Appeal, filed March 10, 2003. Ms. Stevens contends Mr. Gordon did not assign error to the general damages in his notice of appeal, and therefore is not entitled to review of this issue. Hayes v. Wieber Enters., Inc., 105 Wash.App. 611, 618, 20 P.3d 496 (2001) (the appellate court will not address an issue to which no error is assigned). She confuses the requirements for the contents of the notice of appeal with the requirements for appellate briefs.
The only requirements for a notice of appeal are that it contain (1) a title, (2) a specification of the party or parties seeking review, (3) a designation of the decision or part of the decision that the party wants reviewed, and (4) the name of the appellate court to which the review is taken. RAP 5.3(a). Mr. Gordon met these requirements and more. Besides listing the order excluding the testimony of Dr. Sears and the judgment on the verdict, he also listed specific parts of these decisions to be reviewed:
The defendants are appealing the trial court's exclusion of Dr. Sears as an expert witness, the testimony of Dr. Rinaldi regarding the cost of future medical treatment, the trial court's giving of the jury instruction for future wage loss and future medical damages, the trial court's giving of the causation jury instruction, the trial court's refusal to give the defendants' proposed causation jury instruction, and the jury award of future economic damages.
CP at 89. Nothing in RAP 5.3 requires a complete listing in the notice of appeal of the issues to be reviewed. On the other hand, the appellant's brief must contain a concise statement of each error a party contends was made by the trial court, along with the issues pertaining to the assignments of error. RAP 10.3(a)(3). Mr. Gordon's brief complies with RAP 10.3. Consequently, his motion to clarify the notice of appeal is denied as unnecessary to reach the issue of general, noneconomic damages.
A jury's role in determining noneconomic damages is essential, and appellate review must be narrow and restrained. Washburn, 120 Wash.2d at 269, 840 P.2d 860 (quoting Sofie v. Fibreboard Corp., 112 Wash.2d 636, 646, 771 P.2d 711, 780 P.2d 260 (1989) and Bingaman, 103 Wash.2d at 835, 699 P.2d 1230). Pain and suffering are not susceptible to precise measurement and cannot be fixed with mathematical certainty by the proof. Wagner v. Monteilh, 43 Wash. App. 908, 912, 720 P.2d 847 (1986). The court may not substitute its judgment for that of the jury unless no substantial evidence supports the damages. Hill v. Cox, 110 Wash.App. 394, 411, 41 P.3d 495, review denied, 147 Wash.2d 1024, 60 P.3d 92 (2002). Relevant, admissible evidence in the record supports Ms. Stevens's contention that she continues to suffer the effects of her 1998 collision. Mr. Gordon fails to show that improper rulings by the trial court led the jury to award excessive general damages.

ATTORNEY FEES
Ms. Stevens was awarded reasonable attorney fees and costs at trial because Mr. Gordon failed to improve his position in the trial de novo. MAR 7.3. In a separate section of her brief, pursuant to RAP 18.1(b), she requests reasonable fees and costs on appeal. Because Mr. Gordon has again failed to improve his position, Ms. Stevens is entitled to the reasonable attorney fees and costs expended in defending this appeal. MAR 7.3; Boyd v. Kulczyk, 115 Wash.App. 411, 417, 63 P.3d 156 (2003).
Affirmed. The motion to clarify the notice of appeal is denied.
KATO, A.C.J., concurs.
SWEENEY, J. (dissenting).
The trial judge in this case, in an order prepared and presented by the plaintiff, excluded the defendants' proposed expert witness, Dr. Stephen Sears, for one reason and one reason onlyhe had been listed as a consulting expert prior to the arbitration:
THE COURT FINDS that "good cause" exists to grant plaintiff's motion as Dr. Sears had been designated by Defendants as a "consulting expert" under Mothershead v. Adams, 32 Wash.App. 325, 647 P.2d 525 (1982) prior to mandatory arbitration. *663-671 Clerk's Papers at 74. A trial judge necessarily abuses his or her discretion if the ruling is based on an erroneous view of the law. Wash. State Physicians' Ins. Exch. Ass'n v. Fisons, 122 Wash.2d 299, 339, 858 P.2d 1054 (1993). Here, the trial court's ruling apparently rests on the erroneous belief that, once an expert is designated a consultant and shielded from discovery, that expert must be excluded for all time. The majority agrees that that is not the law. Majority at 658. In a trial de novo after arbitration, a different strategy may be adopted, new evidence presented, and additional witnesses called. Wilson v. Horsley, 137 Wash.2d 500, 506, 974 P.2d 316 (1999).
Moreover, there were at least six weeks between the disclosure of Dr. Sears as an expert witness and the commencement of the trial here. There is no showing that he could not have been deposed or that the timing of the deposition would have made it impossible, or for that matter even difficult, for the plaintiff to prepare for trial.
The trial judge hereby the very definition of abuse of discretionabused his discretion in refusing to allow the defendants to call their expert medical witness at the time of trial solely because he was designated a consulting expert prior to the arbitration.
For these reasons I dissent.
NOTES
[1] When the physical condition of a party is in controversy, the court may order the party to undergo a physical examination upon a motion for good cause shown. CR 35.
[2] Mothershead v. Adams, 32 Wash.App. 325, 647 P.2d 525 (1982).
[3] The record does not indicate how Dr. Rinaldi's testimony "changed" during the arbitration proceedings.
[4] WPI 15.01 defines proximate cause as follows:

"The term `proximate cause' means a cause which in a direct sequence [unbroken by any new independent cause,] produces the [injury] [event] complained of and without which such [injury] [event] would not have happened.
"[There may be one or more proximate causes of an [injury] [event].]"
[5] The complete text of WPI 12.04 is as follows:

"There may be more than one proximate cause of the same [alleged harm] [alleged injury] [occurrence]. If you find that the defendant was negligent and that such negligence was a proximate cause of injury or damage to the plaintiff, it is not a defense that [some other force] [some other cause] [or] [the act of some other person who is not a party to this lawsuit] may also have been a proximate cause.
"[However, if you find that the sole proximate cause of injury or damage to the plaintiff was [some other force] [some other cause] [or] [the act of some other person who is not a party to this lawsuit] then your verdict should be for the defendant.]"
[6] We note that Mr. Gordon's proposed instruction should have stated "injury" rather than "accident."