# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 74164-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| RONUALDO PINTINIO CASTILLO, | UNPUBLISHED OPINION |
| Appellant. | FILED: January 19, 2016 |

LEACH, J. — Ronualdo Pintinio Castillo appeals his convictions for assault in the second degree and attempting to elude a pursuing police vehicle. He challenges the sufficiency of the evidence to convict him of assault in the second degree. Also, he claims the trial court abused its discretion by allowing the State to ask a leading question on direct examination. Further, he contends that a witness gave impermissible opinion testimony about guilt. Finally, he asserts that no reasonable juror could have rejected his necessity defense to attempting to elude a police vehicle. Because sufficient evidence supports each element of assault in the second degree, the leading question was harmless, the witness did not give an impermissible opinion about Castillo's guilt, and a reasonable fact finder could find that Castillo failed to prove his necessity defense by a preponderance of the evidence, we affirm.

## Background

On February 8, 2014, Thurston County Deputy Sherriff Michael Brooks stopped a car that he saw traveling the wrong way down a one-way street in downtown Olympia, Washington. Deputy Brooks stopped the car in a local business parking lot. Washington State Patrol Trooper Guy Rosser also saw this car and went to assist Deputy Brooks. After talking with the driver, Deputy Brooks and Trooper Rosser discussed how to proceed with the traffic stop. Deputy Brooks sat in the driver's seat of his car, and Trooper Rosser stood next to the patrol car, talking to Deputy Brooks through the driver's side window.

At that point, Ronualdo Castillo's car nearly struck Deputy Brooks's patrol car. The officers thought either that Castillo needed help or that the driver of the stopped car had called Castillo for help. The officers decided that Trooper Rosser should talk to Castillo while Deputy Brooks continued to process the driver's information from the first vehicle.

Trooper Rosser walked toward Castillo's car while it was slowly rolling through the parking lot. He and Castillo made eye contact, and Castillo accelerated his vehicle at Trooper Rosser. To avoid getting hit, Trooper Rosser stepped back and to the right. Trooper Rosser was holding a flashlight. As the car accelerated past him, his hand and flashlight hit Castillo's driver's side window. Deputy Brooks was still in his vehicle but testified that he heard something hit a window.

Castillo drove from the parking lot onto the street, traveling the wrong way. Deputy Brooks activated his traffic lights and siren and pursued Castillo. Deputy Brooks was in full uniform and driving a fully marked patrol vehicle. Castillo led Deputy Brooks, along with other officers, out of Olympia and into rural Thurston County. The pursuit reached speeds as high as 90 miles per hour. When the paved roadway ended, Castillo pulled onto a gravel road and into a driveway. Officers arrested him there.

Deputy Brooks testified that Castillo bragged about being a good driver and asked him, "I'm a good driver though, right?" When Trooper Rosser asked Castillo why he tried to run him over, Castillo replied, "Sorry." Thurston County Sergeant Dave Odegaard also asked Castillo why he tried to run over Trooper Rosser. Castillo laughed and said, "Because I can." The State charged Castillo with assault in the second degree and attempting to elude a pursuing police vehicle.

At trial, defense counsel objected[1] when the State asked Trooper Rosser, "And do you fear that you could have been severely injured or possibly killed by being struck by a vehicle of that size?" The trial court overruled the objection and allowed the prosecutor to repeat the question.[2] Trooper Rosser answered, "Yes,

---

[1] Defense counsel said, "Objection as to the form of the question. Leading."

[2] After the trial court overruled Castillo's objection, the prosecutor asked Trooper Rosser, "Did you feel that you could have been severely injured or could have been killed by a vehicle of that size traveling at you had it struck you?"

-3

I do. I've seen several people that have been hit by cars and cars always win against people."

Castillo testified that he believed that the sound of Trooper Rosser's flashlight hitting his window was a gunshot and that he feared that the police were trying to kill him. Sergeant Odegaard testified that when he asked Castillo why he ran from police, Castillo laughed and told him that that is how he drives and "other cops wouldn't chase him." The trial court instructed the jury on the affirmative defense of necessity to attempting to elude a pursuing police vehicle. The jury found Castillo guilty of assault in the second degree and attempting to elude a pursuing police vehicle. Castillo appeals.

Analysis

Castillo raises four issues. He first contends that insufficient evidence supports the assault in the second degree. He next challenges a trial court ruling about a question he objected to as leading. Castillo also asserts that Trooper Rosser gave impermissible opinion testimony about his guilt. Finally, he claims that no rational jury could have rejected his necessity defense.

In reviewing a challenge to the sufficiency of the evidence, we view all facts and reasonable inferences in the light most favorable to the State to determine if any rational trier of fact could find the elements of the crime beyond a reasonable doubt.[3] When a defendant asserts an affirmative defense, but the trier of fact rejects that defense, we look to determine if, considering the evidence

---

[3] State v. Lord, 117 Wn.2d 829, 881, 822 P.2d 177 (1991).

in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove the defense using the applicable burden of proof.[4] The State may prove a crime's elements with either direct or circumstantial evidence, one being no more or less valuable than the other.[5] A challenge to the sufficiency of the evidence admits the truth of the State's evidence.[6] This deferential standard leaves questions of credibility, persuasiveness, and conflicting testimony to the jury.[7] "The trier of fact makes determinations of credibility, and we will not review those determinations on appeal."[8] We review trial court evidentiary rulings for abuse of discretion.[9]

Assault in the Second Degree

Castillo asserts that the record contains insufficient evidence to permit a jury to find that he committed each element of assault in the second degree beyond a reasonable doubt.

The State had to prove that Castillo assaulted Trooper Rosser with a deadly weapon.[10] An assault can be committed three ways. An assault is an intentional touching or striking of another person that is harmful or offensive

---

[4] State v. Matthews, 132 Wn. App. 936, 940-41, 135 P.3d 495 (2006).
[5] State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).
[6] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[7] In Re Pers. Restraint of Martinez, 171 Wn.2d 354, 364, 256 P.3d 277 (2011) (citing State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992)).
[8] State v. Embry, 171 Wn. App. 714, 742, 287 P.3d 648 (2012) (citing State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)).
[9] State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997).
[10] RCW 9A.36.021(1)(c); RCW 9A.04.110(6).

regardless of whether that person suffered any physical injury.[11] A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.[12] An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it but accompanied with the apparent present ability to inflict bodily injury if not prevented.[13] Actual bodily injury need not be inflicted.[14] An assault is also an act done with intent to create in another apprehension and fear of bodily injury and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury, even though the actor did not actually intend to inflict bodily injury.[15]

Viewing all facts and reasonable inferences in the light most favorable to the State, sufficient evidence supports a finding that Castillo's vehicle offensively touched Trooper Rosser when it hit his hand. Castillo contends that his vehicle did not contact Trooper Rosser. However, Trooper Rosser testified that he had to move and, "as [Castillo's vehicle] accelerated right past me, that's when I pushed even further off of it hitting it with my right hand to get away from it."

Sufficient evidence also supports a finding that Trooper Rosser had a reasonable apprehension and imminent fear of bodily injury when Castillo accelerated his car at him. Trooper Rosser testified that he made eye contact with Castillo twice, they maintained eye contact, and then Castillo accelerated his

---

[11] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50, at 547 (3d ed. 2008) (WPIC).
[12] WPIC 35.50.
[13] WPIC 35.50.
[14] WPIC 35.50.
[15] WPIC 35.50.

vehicle at him. Trooper Rosser said that if he had not moved out of the way, the car would have hit him, he feared injury if hit, he's seen several people that have been hit by cars, and "cars always win against people."

Viewing the record in the light most favorable to the State, the record contains sufficient evidence about Castillo's car making contact with Trooper Rosser and Trooper Rosser's reasonable apprehension and imminent fear of bodily injury. Thus, sufficient evidence supports the jury's verdict that Castillo committed assault in the second degree.

Leading Question

Castillo asserts that the trial court abused its discretion when it allowed the State to ask Trooper Rosser a leading question on direct examination.[16]

A leading question suggests the desired answer.[17] Leading questions should not be used in direct examination "'except as may be necessary to develop the witness' testimony.'"[18] "The trial court has broad discretion to permit leading questions and will not be reversed absent abuse of that discretion."[19] Allowing leading questions is not usually reversible error.[20] However, "'the persistent pursuit of such a course of action is a factor to be added in the

---

[16] The State asked Trooper Rosser, "And do you fear that you could have been severely injured or possibly killed by being struck by a vehicle of that size?" Trooper Rosser answered, "Yes, I do. I've seen several people that have been hit by cars and cars always win against people."

[17] Stevens v. Gordon, 118 Wn. App. 43, 55, 74 P.3d 653 (2003) (citing State v. Scott, 20 Wn.2d 696, 698, 149 P.2d 152 (1944)).

[18] Stevens, 118 Wn. App. at 55 (quoting ER 611(c)).

[19] Stevens, 118 Wn. App. at 55-56 (citing State v. Delarosa-Flores, 59 Wn. App. 514, 517, 799 P.2d 736 (1990)).

[20] Stevens, 118 Wn. App. at 56.

balance.'"[21] Even though the question may call for a yes or a no answer, it is not leading unless it is worded so that by permitting the witness to answer yes or no, the witness would be testifying in the language of the interrogator rather than in the witness's own words.[22]

Although the State contends that the question did not suggest the desired answer, the question called for a yes or no answer and asked Trooper Rosser to adopt the language of the prosecutor asking the question.

But Castillo does not show that allowing this leading question prejudiced him. Trooper Rosser explained his answer, and the explanation did not adopt the prosecutor's language. Considering the record, the form of the question did not materially affect the outcome of trial. In response to other questions on direct examination, Trooper Rosser said that Castillo accelerated his car at him and he got out of the way while pushing off of the car. He also stated his view that Castillo intentionally drove at him, and had he not moved to avoid Castillo's car, it would have hit him. A jury could also reasonably infer that a vehicle accelerating into a person would cause bodily injury.

The trial court abused its discretion when it overruled Castillo's leading question objection because the challenged question asked Trooper Rosser to adopt the prosecutor's language. But the error was harmless because Trooper Rosser explained his answer, overwhelming evidence supports each element of

---

[21] Stevens, 118 Wn. App. at 56 (quoting State v. Torres, 16 Wn. App. 254, 258, 554 P.2d 1069 (1976)).
[22] Scott, 20 Wn.2d at 699.

assault in the second degree, and the record does not show that the prosecutor persisted with improper leading questions.

Opinion Testimony

For the first time on appeal, Castillo contends that Trooper Rosser's testimony violated Castillo's constitutional right to a jury trial because it included an opinion about his guilt. Appellate courts generally will not consider issues raised for the first time on appeal.[23] However, RAP 2.5(a)(3) allows a party to raise for the first time on appeal a manifest error affecting a constitutional right.[24] "Manifest" requires a showing of actual prejudice.[25] The party raising the issue must make a plausible showing that the asserted error had practical and identifiable consequences in the trial of the case.[26]

Lay witnesses may give opinions or inferences based upon rational perceptions that help the jury understand the witness's testimony and that are not based upon scientific or specialized knowledge.[27] Impermissible opinion testimony about the defendant's guilt may be reversible error because this evidence violates the defendant's constitutional right to a jury trial, which includes a right to an independent determination of the facts by the jury.[28] "Opinions on

---

[23] State v. Kirkman, 159 Wn.2d 918, 926, 934, 155 P.3d 125 (2007) (citing State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

[24] Kirkman, 159 Wn.2d at 926.

[25] Kirkman, 159 Wn.2d at 935 (citing State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001)); RAP 2.5(a)(3).

[26] Kirkman, 159 Wn.2d at 935.

[27] State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (citing ER 701).

[28] Kirkman, 159 Wn.2d at 927.

guilt are improper whether made directly or by inference."[29] To determine the admissibility of opinion testimony, the court looks to the type of witness testifying, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact.[30] However, some areas are clearly inappropriate for opinion testimony, such as personal beliefs about the defendant's guilt, the intent of the accused, or the veracity of witnesses.[31]

In cases where Washington courts have held opinion testimony inadmissible, the opinion evidence included explicit testimony about the defendant's guilt and not the witness's factual observations.[32]

In State v. Quaale,[33] a DUI (driving under the influence) case, our Supreme Court held inadmissible a trooper's opinion about impairment, based solely on the horizontal gaze nystagmus test and not his own observations of the defendant.

---

[29] State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014) (citing Montgomery, 163 Wn.2d at 594).

[30] Quaale, 182 Wn.2d at 199-200 (citing Montgomery, 163 Wn.2d at 591).

[31] Quaale, 182 Wn.2d at 200 (citing Montgomery, 163 Wn.2d at 591).

[32] Quaale, 182 Wn.2d at 198-99; Montgomery, 163 Wn.2d at 595 (holding that officer testimony was improper because it contained explicit opinion on intent).

[33] 182 Wn.2d 191, 201-02, 340 P.3d 213 (2014) (reasoning that the trooper's opinion testimony was improper because it was not supported by his own factual testimony).

Washington courts have upheld the admission of opinion testimony when the witnesses had strong factual bases supporting their opinions and those opinions did not include an explicit statement on an ultimate issue of fact.[34]

In City of Seattle v. Heatley,[35] this court held admissible an officer's testimony that embraced an ultimate issue but did not contain an explicit statement about the defendant's guilt. In that case, the officer testified that Heatley was "obviously intoxicated and affected by the alcoholic drink [such] that . . . he could not drive a motor vehicle in a safe manner."[36] The court reasoned that the officer's opinion was "based solely on his experience and his observation of Heatley's physical appearance and performance on the field sobriety tests."[37] The officer testified that Heatley performed a series of field sobriety tests, his eyes were bloodshot and watery, his face was flushed, his balance was unsteady, and he had a strong odor of alcohol on his breath.[38] The officer said that he based his conclusion on Heatley's physical appearance, his own observations, and the field sobriety tests that Heatley performed.[39]

The court in Heatley noted that an opinion that encompasses ultimate factual issues supporting the conclusion that the defendant is guilty does not

---

[34] Kirkman, 159 Wn.2d at 938; City of Seattle v. Heatley, 70 Wn. App. 573, 579, 854 P.2d 658 (1993); State v. Lewellyn, 78 Wn. App. 788, 795, 895 P.2d 418 (1995).
[35] 70 Wn. App. 573, 579-80, 854 P.2d 658 (1993).
[36] Heatley, 70 Wn. App. at 576.
[37] Heatley, 70 Wn. App. at 579.
[38] Heatley, 70 Wn. App. at 576.
[39] Heatley, 70 Wn. App. at 576.

necessarily make that testimony an improper opinion on guilt.[40] The court also stated that it "'is the very fact that such opinions imply that the defendant is guilty which makes the evidence relevant and material.'"[41]

Similar to the officer in Heatley, Trooper Rosser testified about his own perceptions that he based on his observations of Castillo's behavior. Trooper Rosser testified that he was approximately 10 to 15 feet from Castillo's car, Castillo maintained eye contact with him, and Castillo accelerated. Trooper Rosser testified that he thought Castillo was intentionally driving at him because they made eye contact more than once and they were looking at each other when Castillo accelerated the car at him. Trooper Rosser said he moved to avoid being hit by Castillo's car, and the car accelerated right past him. Trooper Rosser also testified that had he not moved out of the way, he was sure that the car would have hit him.

The State's question to Trooper Rosser copied language from one of the elements of a charged crime.[42] However, Trooper Rosser based his testimony on his perception. It helped to provide the jury with a clear understanding of his testimony or the determination of a fact in issue and was not based on scientific,

---

[40] Heatley, 70 Wn. App. at 579.

[41] Heatley, 70 Wn. App. at 579 (quoting State v. Wilber, 55 Wn. App. 294, 298 n.1, 777 P.2d 36 (1989)).

[42] Jury instruction 9 states, "An assault is . . . an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury."

technical, or other specialized knowledge.[43] The trial court also instructed the jury that it was the sole trier of fact and the sole decider of witness credibility.

Trooper Rosser's testimony did not include an explicit opinion on Castillo's credibility or guilt. The record also indicates that Castillo did not object to this testimony at trial. Castillo has not made a plausible showing that the asserted error had practical and identifiable consequences at trial. Thus, no manifest constitutional error occurred.

## Necessity Defense

Castillo next contends that no rational trier of fact could have found that he failed to prove his necessity defense by a preponderance of the evidence.

"The necessity defense is available to a defendant 'when the physical forces of nature or the pressure of circumstances cause the accused to take unlawful action to avoid a harm which social policy deems greater than the harm resulting from a violation of the law.'"[44] A defendant may not assert the defense if he brought about the compelling circumstances or had an available legal alternative.[45] The defendant must prove by a preponderance of the evidence that he reasonably believed the commission of the crime was necessary to avoid or minimize a harm, the harm sought to be avoided was greater than the harm resulting from a violation of the law, and no legal alternative existed.[46]

---

[43] ER 701.
[44] State v. Gallegos, 73 Wn. App. 644, 650, 871 P.2d 621 (1994) (quoting State v. Diana, 24 Wn. App. 908, 913, 604 P.2d 1312 (1979)).
[45] Gallegos, 73 Wn. App. at 650 (quoting Diana, 24 Wn. App. at 913-14).
[46] Gallegos, 73 Wn. App. at 651 (citing Diana, 24 Wn. App. at 916).

Castillo contends that no rational jury could reject his necessity defense because the record showed that he reasonably believed that eluding police was necessary to avoid or minimize the harm of "being shot by a police officer." However, this argument requires that the jury believe Castillo. Viewing the record in the light most favorable to the State, Castillo's argument fails.

In State v. Gallegos,[47] this court held that the pressure under which the defendant acted did not result from a physical force of nature and, therefore, as a matter of law, a necessity defense was not available to him. The court reasoned that, even if the necessity defense was available to him, Gallegos failed to present sufficient evidence to persuade a jury because he relied on his unreasonable subjective beliefs.[48]

When Gallegos returned home from a bar and learned about people harassing his friend at that bar, Gallegos, who had been drinking alcohol, got in his car and drove toward the bar.[49] Police observed Gallegos run six red lights and cause two cars to brake abruptly to avoid a collision.[50] The court noted that simply waiting a few minutes and informing the pursuing officer about the situation would have allowed the officer to take the necessary legal action to find Gallegos's friend at the bar and protect her.[51]

---

[47] 73 Wn. App. 644, 651, 871 P.2d 621 (1994).
[48] Gallegos, 73 Wn. App. at 651.
[49] Gallegos, 73 Wn. App. at 646.
[50] Gallegos, 73 Wn. App. at 646.
[51] Gallegos, 73 Wn. App. at 651.

Although Castillo testified that he thought that he was being shot at by police, no evidence in the record corroborated this belief. Castillo testified that he did not see Trooper Rosser reach for or point a weapon at him before the pursuit. There is no evidence in the record that Castillo's car sustained any damage from a bullet.

The trial court instructed the jury on the necessity defense, and the trier of fact found Castillo's testimony unpersuasive. As the State correctly points out, Castillo's defense relied on his own testimony, and the fact that the jury found his testimony unpersuasive is not reversible error. "Credibility determinations are for the trier of fact and cannot be reviewed on appeal."[52]

Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have rejected Castillo's necessity defense.

Conclusion

Because the record includes sufficient evidence to support each element of assault in the second degree, the answer to the challenged leading question was harmless, no witness gave an impermissible opinion about Castillo's guilt,

---

[52] State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

and a reasonable fact finder could find that Castillo failed to prove his necessity defense by a preponderance of the evidence, we affirm.

Leach, J.

WE CONCUR:

Appelwick

Cox, J.